UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | |
| v. | ) ) ) ) ) | Criminal No. 19-10162-DJC |
| JARRETT GALLOWAY, | ) ) ) | |
| Defendant. | ) ) ) ) ) | |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                          **July 30, 2020**

**I.    Introduction**

Defendant Jarrett Galloway ("Galloway") has moved to suppress evidence obtained from his residence during the execution of a search warrant on April 25, 2019, which gave rise to the second of two counts in the indictment in this case. D. 36. Having considered the motion and attachments, D. 36, the government's opposition, D. 36, and oral argument, D. 55, the Court DENIES the motion. Accordingly, the Court makes its findings of fact and legal analysis below.

**II.   Findings of Fact**

Unless otherwise noted, these findings are based upon the affidavit of Special Agent John Runyan ("Runyan") of the Drug Enforcement Administration ("DEA") submitted in the support of the search warrant at issue in this case. D. 36-3; D. 36-4.

**A.    Investigation Concerning Galloway**

Runyan submitted a seventy-eight-page affidavit ("Runyan Affidavit"), which was also submitted in support of search warrants for several residences, including Galloway's residence at

1

153 Acushnet Avenue, Apartment #2 in New Bedford ("Apartment 2"), and several motor vehicles in connection with an investigation into a drug trafficking organization led by Manual Pina-Agee ("Pina-Agee"). D. 36-3 ¶¶ 4-5; D. 37 at 2.

For some time, the Wareham Police Department ("WPD") had received reports that Pina-Agee is a very significant drug dealer in Wareham and that Galloway is a key member of Pina-Agee's organization. D. 36-3 ¶ 8. The scope of Pina-Agee's drug operation was revealed not only by controlled purchases from Pina-Agee, Galloway and Jodi Smith ("Smith"), but also from the court-authorized wiretap of Pina-Agee's phone during periods between late October 2018 and April 2019. D. 36-3 ¶¶ 8, 37.

Although Galloway lives in New Bedford, the investigation revealed that he sold drugs primarily in and around Wareham. D. 36-4 ¶ 126. Between February and June 2017, the WPD worked with the Bureau of Alcohol, Tobacco and Firearms ("ATF") to conduct six controlled purchases from Galloway of a total of approximately twenty grams of fentanyl and/or heroin using a confidential informant ("CS-1"). D. 36-3 ¶¶ 8, 12; D. 37 at 2. CS-1 had previously purchased heroin from Galloway and knew that Pina-Agee supplied Galloway. D. 36-3 ¶ 11. For an example of one of the controlled buys by CS-1, during the week of February 13, 2017, CS-1 purchased 2.582 grams of fentanyl from Galloway. D. 36-3 ¶ 13. To initiate the buy, CS-1 called Galloway and indicated that he needed a "quarter," which refers to 2.5 grams, of heroin. D. 36-3 ¶ 13. Galloway indicated to CS-1 the street where they would meet and investigators gave CS-1 $175 to purchase the heroin. D. 36-3 ¶ 13. An undercover officer drove CS-1 to a location in Wareham. D. 36-3 ¶ 13. Galloway called CS-1 back and gave him a different location to meet. D. 36-3 ¶ 13. After driving CS-1 to that location, the undercover officer witnessed CS-1 meet with Galloway inside Galloway's car. D. 36-3 ¶ 13. CS-1 then returned directly to the undercover officer's car

and turned over custody of the heroin he had purchased as well as twenty-five dollars.  D. 36-3 ¶ 13.  CS-1 indicated that Galloway had sold him the heroin for $150.  D. 36-3 ¶ 13.  CS-1 also reported that Galloway had at least ten additional bags of heroin with him and had a quarter or a half set aside to sell to another customer.  D. 36-3 ¶ 13. A DEA forensic chemist confirmed that the purchased drugs contained heroin and fentanyl.  D. 36-3 ¶ 13.

In October 2017, a second confidential informant ("CS-2") made another controlled purchase of 3.72 grams of suspected heroin from Galloway.  D. 36 ¶¶ 8, 22.  Similar to CS-1, CS-2 had purchased drugs from Galloway on multiple occasions prior to the controlled purchase.  D. 36-3 ¶ 21.  In January and February of 2019, an undercover officer conducted three controlled buys of fentanyl from Smith, which the investigation revealed Galloway had supplied the drugs for the first of these purchases on January 29, 2019.  D. 36-3 ¶¶ 8, 33.  WPD also arrested Galloway on March 22, 2019 when he was found in possession of packaged marijuana.  D. 36-4 ¶ 126.

During the course of the investigation, law enforcement officers identified Apartment 2 as Galloway's residence.  On January 2, 2019, the New Bedford Police Department responded to a suspected drug overdose there and were met by Galloway there.  D. 36-4 ¶ 125.  On March 6 and 7, 2019, Runyan observed Galloway's Hyundai Elantra in the parking area for this residence, the same vehicle that Galloway had used to supply Smith with fentanyl for the undercover purchase on January 29, 2019.  D. 36-4 ¶ 125.   Officers also observed Galloway leave this address in his vehicle before New Bedford police officers arrested him on an outstanding warrant.  D. 36-4 ¶ 125.  On April 4, 2019, a few weeks before the execution of the search warrant on Apartment 2, officers observed Galloway leave Apartment 2 accompanied by woman and unidentified male.  D. 36-4 ¶ 125.

Based upon this and other information and his training and experience, Runyan attested that he believed that Galloway would "have evidence of drug trafficking in his residence, including drugs, proceeds, packaging equipment, and records of monies by various customers to Galloway for drugs supplied to him." D. 36-4 ¶ 126.

### B. Execution of the Search Warrant

On April 25, 2019, investigators executed the search warrant on Apartment 2, Galloway's residence. D. 37 at 1. Galloway was in Apartment 2 at the time the search warrant was executed, along with Tia Bell and Alberto Velasquez. Id. Inside the master bedroom (which evidence indicates is a room that Galloway and Bell shared), investigators seized a small amount of cocaine base and twenty-five thousand dollars in cash. Id. In a second bedroom, investigators found a small amount of fentanyl and a bag containing powder residue that was not from a controlled substance. D. 37 at 2. In the third bedroom, investigators located ten grams of fentanyl, eighteen thousand dollars in case and a wallet containing identification and credit cards in Galloway's name. Id.

As a result of this investigation, Galloway has now been charged in a two-count indictment charging him with distribution of fentanyl on January 29, 2019 (Count I) and possession with intent to distribute cocaine on April 25, 2019. (Count II). D. 1. His motion to suppress concerns only Count II which arises from the drugs and other items seized from Apartment 2 pursuant to the search warrant on April 25, 2019.

### III. Discussion

### A. Probable Cause for a Search Warrant

In reviewing the adequacy of probable cause for a warrant, a reviewing court is "tasked with making a judgment based on what appears within the four corners of the affidavit." United

States v. Tanguay, 787 F.3d 44, 53 (1st Cir. 2015).  It is well settled that there is "'a presumption of validity with respect to the affidavit supporting the search warrant.'"  United States v. Tzannos, 460 F.3d 128, 136 (1st Cir. 2006) (quoting Franks v. Delaware, 438 U.S. 154, 171 (1978)).  Where a defendant challenges the legality of a search conducted pursuant to a search warrant, the defendant bears the burden of showing by a preponderance of the evidence that the search was unlawful.  United States. v. Legault, 323 F. Supp. 2d 217, 220 (D. Mass. 2004); see United States v. Burdulis, No. 10-40003, 2011 WL 1898941, at *3 (D. Mass. May 19, 2011) (citing cases).  The issue for the reviewing court is whether "the totality of the circumstances" in the affidavit afforded the magistrate judge a "substantial basis for determining the existence of probable cause" for the search.  Illinois v. Gates, 462 U.S. 213, 238 (1983).  A reviewing court "must examine the affidavit in a practical, commonsense fashion" and "accord considerable deference to a magistrate's determination that information in a particular affidavit establishes probable cause."  United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999) (internal quotation marks and citation omitted).

    **A. Probable Cause Existed for the Issuance of the Search Warrant**

A search warrant "must demonstrate probable cause to believe that (1) a crime has been committed . . . and (2) enumerated evidence of the offense will be found at the place to be searched."  United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005) (citation omitted).  It is the second element, the "nexus" element that Galloway challenges here. D. 36-2 at 12; D. 37 at 3.  That is, Galloway contends that the search warrant affidavit failed to show probable cause that evidence of drug possession with intent to distribute would be found in Apartment 2.

Here, considering the totality of the circumstances, the search warrant affidavit provided a sufficient nexus that the evidence of drug trafficking sought in the search warrant would be found in Apartment 2, Galloway's residence.  The affidavit reflected the information that officers had

from several sources, CS-1 and CS-2, that Galloway was in the ongoing business of selling drugs and did so in conjunction with Pina-Agee and others. Under agent's observations, two confidential sources had made a total of seven controlled buys from him in 2017 and evidence indicated that Galloway had supplied Smith with the drugs that he sold to an undercover officer in January 2019. Although these transactions had not happened at Apartment 2, officers had been called to this residence for suspected drug overdose in January 2019 when they were greeted by Galloway there. Moreover, in the months and weeks leading up to execution of the search warrant, investigators had observed Galloway and/or his vehicle at Apartment 2. In addition to these facts, Runyan also attested in the affidavit that "based on my training and experience, through which I know that people who engage in the business of drug trafficking like Galloway need a safe place to store and prepare drugs for sale and to keep the proceeds of their activity" and such "safe place, at least for an individual like Galloway, is typically their residence, especially when their residence is a good distance from their trafficking activity," D. 36-4 ¶ 126, which was primarily in and around Wareham. That is, the totality of the circumstances indicate that evidence of drug trafficking would be found in Apartment 2, Galloway's residence during the time in which the investigation revealed he was in the business of drug dealings.

The suppression of evidence seized from a defendant's residence in United States v. Roman, 942 F.3d 43 (1st Cir. 2019) does not warrant a different outcome here. Unlike Galloway, who, as the investigation showed, was supplying smaller quantities to customers, the defendant in Roman was a wholesale, kilogram supplier who had indicated that he had no current drug supply around the time of the application for a search warrant. Id. at 47. Moreover, unlike here where there was information from several sources that Galloway had a history and ongoing business selling drugs (reflected in the 2017 controlled buys, supplying drugs to Smith in late January 2019

and suspected overdose at Apartment 2 earlier that month), the court there found that it was not established that Roman had a "long-time" history of drug dealing to support the inference that he would have drug-related evidence at his residence, particularly where there was evidence that the drug operation stored such contraband in hides in vehicles. Id. at 49, 53. Here, there was probable cause for the magistrate judge to believe that Galloway would be storing drug and other items relating to drug distribution at his residence given the result of the investigation including but not limited to his travel to customers in Wareham and the suspected overdose at Apartment 2. See United States v. Feliz, 182 F.3d 82, 88 (1st Cir. 1999). Like Feliz, which the First Circuit distinguished in Roman, there was evidence that Galloway was engaged in drug trafficking over time, no other drug-dealing location was identified with him and the circumstances showed that it was reasonable for the magistrate judge to rely upon this evidence along with the agent's attestation that drug traffickers commonly keep drug-related items in their residences. Roman, 942 F.3d at 52 (distinguishing Feliz). Far from an impermissible assumption that "there will automatically be probable cause to search a suspect's residence," Roman, 182 F.3d at 88, here there were specific observations and reasonable inferences from same to conclude that there was probable cause to believe that there would evidence of Galloway's drug distribution in his residence, Apartment 2.

### B. Leon Good Faith Exception to the Exclusionary Rule Would Apply

Even if probable cause had not been shown here (which there has been as discussed above), the Court agrees with the government that the good faith exception under United States v. Leon, 468 U.S. 897, 926 (1984) still would preclude suppression of the evidence seized in Apartment 2. The touchstone of this exception is that law enforcement officers are entitled to reasonable reliance upon warrants duly issued by a court. Id. at 922. In the absence of any allegation that the magistrate judge was misled by information that the affiant provided that was false or that he would

have known to be false but for his reckless disregard for truth,[1] that the magistrate judge abandoned his detached and neutral role in issuance, that the affidavit was so lacking in indicia of probable cause that reliance upon it was unreasonable or that the warrant was so facially deficient that the agents could not have reasonably concluded that it was valid, the exception applies.  Id. at 926; United States v. Owens, 167 F.3d 739, 745 (1st Cir. 1999).  Given the absence of any of the circumstances referenced above, even in the absence of a showing of probable cause, the Leon good faith exception would still apply and suppression of the evidence seized on April 25, 2019 from Apartment 2 is not warranted.

**IV.     Conclusions**

For all of the aforementioned reasons, the Court DENIES Galloway's motion to suppress, D. 36.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[1] Counsel for Galloway suggested during oral argument that there might be a basis for a Franks challenge here.  Based upon the Court's review of the motion papers and the present record, the Court does not see the basis for same.